UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Franklin T.,<br><br>  Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Civ. No. 20-16821 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

  Franklin T. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Title II Disability Insurance Benefits ("DIB"). Upon reviewing and weighing certain evidence, the Administrative Law Judge ("ALJ") concluded that Franklin T. was not disabled from July 24, 2017, through December 31, 2018, the last date insured. Franklin T. claims the ALJ's decision is not supported by substantial evidence.

  I find that the ALJ's determinations that Franklin T.'s physical and mental limitations did not render him unable to engage in substantial gainful activity were supported by substantial evidence. The Commissioner's decision is therefore **AFFIRMED**.

I.    **BACKGROUND**[1]

Franklin T. applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on December 21, 2017, alleging disability as of July 24, 2017. (AR 12.) Franklin T.'s application was denied initially and on Reconsideration. (AR 85–94.) Franklin T. requested a hearing before an ALJ to review his application de novo. (AR 97–98.) A video hearing was held on September 23, 2019, before ALJ Ena Weathers, who issued a decision on October 28, 2019. (AR 9–63.) ALJ Weathers denied disability at step five of the sequential evaluation, on the ground that, although Franklin T. could no longer perform his past relevant work, he is capable of adjusting to a range of medium work, with additional exertional and non-exertional limitations, that accommodates his limitations and exists in significant numbers in the national economy. (AR 23–24.)

Franklin T. requested Appeals Council Review of ALJ Weathers's decision, but his request was denied on September 17, 2020. (AR 151–54.) This denial rendered ALJ Weathers's decision the final decision of the Commissioner. (AR 1–6.) Franklin T. now appeals that decision, pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

II.    **DISCUSSION**

**A. Five-Step Process and this Court's Standard of Review**

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

---

[1]    Certain citations to the record are abbreviated as follows:

DE = docket entry in this case
AR = Administrative Record (DE 7)
Pl. Br = Plaintiff's brief in support of remand (DE 18)

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.
>
> **Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).
>
> **RFC and Step 4:** Determine the claimant's "residual functional capacity," (the "RFC") meaning "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on his RFC, the claimant can return to his prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.
>
> **Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474

F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where

the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ Weathers undertook the five-step inquiry. Her conclusions are summarized as follows:

### Step 1

ALJ Weathers concluded that Franklin T. has not engaged in any substantial gainful activity between July 24, 2017, the alleged onset date of his disability and December 31, 2018 the date last insured. (AR 14.)

### Step 2

The ALJ found that Franklin T. had the following severe impairments: cirrhosis; diabetes mellitus; alcohol use disorder major depressive disorder; and cognitive impairment. (AR 14.) In addition, she found that Franklin T. suffered from the following non-severe impairments: benign hypertension (2F/7); eye conditions such as blepharitis and disorder of refraction (5F/44); obese with BMI of 32 (2F/4); gastritis (2F/7); lyme disease (2F/99); mild artery plaque (2F/56); splenomegaly and bilateral nephrolithiasis (2F/54); hypersplenism, thrombocytopenia (3F); neck pain following fall with mild degenerative changes and some right-sided neural foraminal encroachment in imaging (2F/47); and hyperlipidemia (5F/40). Because the ALJ found that Franklin T. did suffer from several severe impairments, she proceeded to step 3.

### Step 3

With respect to his severe impairments, ALJ Weathers found that Franklin T. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 14-15.). ALJ Weathers paid particular attention to medical listings 5.02 (gastrointestinal hemorrhaging), 5.05 (chronic liver disease), 9.00 (endocrine disorders), 12.02 (Neurocognitive disorders), and 12.04 (depressive, bipolar and related disorders).

First, ALJ Weathers declined to find that Franklin T.'s impairments met the criteria for medical listing 5.02 (gastrointestinal hemorrhaging) because the record evidence did not demonstrate that Franklin T. required blood transfusions three times during a consecutive six month period. (AR 15.)

Second, ALJ Weathers declined to find that Franklin T.'s impairments met the criteria for medical listing 5.05 (chronic liver disease) because there was no objective medical evidence that he met or equaled this listing with the required degree of treatment for hemorrhaging, ascites, bacterial peritonitis, hepatorenal syndrome, or hepatopulmonary syndrome. (AR 15.)

Third, ALJ Weathers declined to find that Franklin T.'s impairments met the criteria for medical listing 9.00 (endocrine disorders) because his diabetes mellitus, even when not controlled, did not lead to complications or symptoms that could be evaluated under another listing.

Next, ALJ Weathers found that Franklin T.'s mental impairments, individually and in combination, did not meet the criteria of medical listings 12.02, and 12.04. Specifically, the "paragraph B" criteria were not satisfied. To satisfy "paragraph B" criteria, a claimant's mental impairments "must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." (AR 15–16.)[2] In particular, he found that the medical

---

[2]  A claimant's affective disorder meets or medically equals listings 12.02 and 12.04 when it either satisfies both the paragraph A and paragraph B criteria, or satisfies the C criteria of that listing. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.

  To satisfy the paragraph A criteria for listing 12.02, a claimant must demonstrate that she has experienced, "significant cognitive decline from a prior level of functioning." C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.02 To satisfy the paragraph A criteria, for listing 12.04 a claimant must, in essence, medically document the persistence of depressive or bipolar syndrome. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. To satisfy the Paragraph B criteria of listings 12.02 and 12.04, a claimant must demonstrate that his affective disorder results in "extreme limitation of one, or marked limitation of two" of the following areas of mental functioning:

  1. Understand, remember, or apply information.
  2. Interact with others.

evidence demonstrates that Franklin T. had only moderate limitations in the areas of "understanding, remembering, or applying information"; "interacting with others"; "concentrating, persisting, or maintaining pace"; and "adapting or managing oneself."  (AR 16–17.)

ALJ Weathers also found that Franklin T. did not meet the "paragraph C" criteria. (AR 17.) ALJ Weathers considered, *inter alia*, Franklin T.'s degree of mental limitation when determining Franklin T.'s RFC.

### RFC and Step 4 – Ability to Perform Past Work

Next, ALJ Weathers defined Franklin T.'s RFC:

> [T]he claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant is limited to simple routine repetitive non-tandem tasks without strict production demands; must avoid concentrated exposure to hazards and work at unprotected heights; frequent interaction with coworkers; an ability to change from standing to seated or vice versa for up to two minutes every two hours without interference with work product; and occasional interaction with the general public.

---

3. Concentrate, persist, or maintain pace.

4. Adapt or manage oneself.

*Id.*

"'Marked' as a standard for measuring the degree of limitation . . . means more than moderate but less than extreme." *Id.* § 12.00.

Listing 12.04, Paragraph C states:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: (1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and (2) Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C). *See generally Trzeciak v. Colvin*, No. CV 15-6333 (KM), 2016 WL 4769731, at *7 (D.N.J. Sept. 12, 2016); *see also* https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm.

7

(AR 16).

ALJ Weathers began his RFC analysis by following a two-step process in which she first determined whether Franklin T. had an underlying medically determinable physical or mental impairment "that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce [Franklin T.'s] pain or other symptoms." (AR 17.) He then explained that in the second step, he "must evaluate the intensity, persistence, and limiting effects of [Franklin T.'s] symptoms to determine the extent to which they limit [his] work-related activities." (AR 18.) To do this, the ALJ is required to look to objective medical evidence, or to the entire case record where objective medical evidence does not substantiate Franklin T.'s statements about "the intensity, persistence, and limiting effects of [his] symptoms." (AR 17.)

ALJ Weathers concluded that Franklin T.'s medically determinable impairments could reasonably be expected to cause the alleged mental and physical symptoms, but found that his statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 18.) She notes, for example, that most of his impairments are related to excessive alcohol consumption and that certain resulting limitations, such as an inability to drive, are not disabling impairments. (AR 19.) In addition, she found that because Franklin T. "maintained a normal gait and there were no reports of diminished muscle strength or atrophy … he could work at medium exertion." (AR 21.)

ALJ Weathers also examined Franklin T.'s mental limitations. As noted above, she found that he had moderate limitations in all four of the "paragraph B" areas. She also found that although he only attended a couple of therapy appointments, his symptoms of depression were controlled when he was sober and on medication though he still had shortness of breath and fatigue. (AR 18.) In addition, she found that the objective medical evidence did not show a

8

worsening of symptoms on the alleged onset date. (AR 18.) She was not, however, persuaded by the findings of two state agency psychologists who determined that Franklin T. did not have any severe mental impairments. (AR 21.)

Based on these findings, at step four, ALJ Weathers agreed with the vocational expert and concluded that Franklin T. was unable to perform his past relevant work as an auto parts delivery driver, janitorial services supervisor, and janitor. (AR 22-23.)

### Step 5

At step five, ALJ Weathers explained that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR 23.) Accordingly, she found that Franklin T. is not disabled under the SSA. (AR 24.)

ALJ Weathers found that Franklin T.'s ability to perform work has been compromised by non-exertional limitations. (AR 22.) ALJ Weathers relied on the testimony of a vocational expert, who testified that Franklin T. would still be able to perform the following representative occupations: hand packager, (Dictionary of Occupational Titles ("DOT")) 920.587-018, Hospital food service worker, (DOT) 319.677-014; and Kitchen helper, (DOT) 318.687-010. (AR 23-24.)[3] All three occupations are classified as light and unskilled and there are between 41,000 and 281,000 positions in these three occupations in the United States. (AR 23-24.)

### C. Franklin T.'s Challenge

Franklin T. challenges the Commissioner's decision on two primary grounds. First, he argues that the ALJ's physical RFC assessment was not sufficiently connected to the record evidence and thus not supported by substantial evidence. (Pl. Br. at 12–21.) Second, he similarly argues that the

---

[3]   When given additional hypothetical restrictions by the ALJ, the vocational expert also noted that there were additional jobs Franklin T. could perform, including label pinker and semiconductor bonder. (AR 48.)

9

mental component of the RFC did not comport with the record evidence and thus was not supported by substantial evidence. (*Id.* at 21–25.) I find both of these arguments unavailing and find that both the physical and mental components of Franklin T.'s RFC were supported by substantial evidence from the records.

### 1. Analysis

Franklin T. argues that the ALJ misapplied the Administration's regulations to determine that his physical RFC, which allowed for up to "medium work," was not supported by substantial evidence. (*Id.* at 16–17.) Specifically, he argues that the ALJ did not undertake the required "function by function" assessment. (*Id.* at 17.) Although the claimant's brief lists a variety of impairments, at no point does it cite any record evidence suggesting that Franklin T. would not be able to perform work at a medium level of exertion. In her decision, the ALJ determined that "the claimant largely maintained a normal gait and there were no reports of diminished muscle strength or atrophy, so he could work at medium exertion." (AR 21.) She did, however, include an exertional limitation in the RFC such that Franklin T. would be required to "change from standing to seated or vice versa for up to two minutes every two hours without interference with work product." (AR 17.) The ALJ noted the advice of Franklin T.'s doctors that he should not drive; while not disabling, this limitation did persuade the ALJ that he was unable to perform his previous work as a delivery driver. (AR 19.) Overall, the objective medical evidence in the record entirely supports this determination and claimant cites no significant evidence to the contrary. (AR 250, 378–79, 386–87, 394, 397–98, 401–02.)

Next, I examine Franklin T.'s argument that the mental portion of the RFC was not supported by substantial evidence because it was not sufficiently connected to the medical records. Franklin T. concedes that the ALJ found that he suffered from three severe impairments: major depressive disorder, cognitive impairment, and alcohol use disorder, but argues that the ALJ did not

10

sufficiently integrate the resulting limitations into her RFC finding. (Pl. Br. at 21.) I disagree. Again, the claimant's brief does not cite evidence from the record that contradicted the ALJ's findings. The RFC specifically provided that Franklin T. could only perform "simple routine repetitive non-tandem tasks without strict production demands" and that he could only occasionally interact with the public. (AR 17.) The ALJ's opinion specifically links these aspects of the RFC to Franklin T.'s "moderate limitations in understanding, remembering, applying information, concentration, persistence and pace." (AR 21.) Given Franklin T.'s very limited record of mental health care, and the fact that his symptoms of depression improved drastically with medication, if anything the ALJ found that Franklin T. had more non-exertional limitations than was warranted by the record evidence. (AR 19.) In fact, the ALJ's finding that Franklin T. had severe mental disorders clashed with the more benign assessment of the state agency psychologists. (AR 21.) Overall, then, I find that the non-exertional limitations of the RFC were consistent with the objective medical evidence in the record and thus were supported by substantial evidence.

      Finally, Franklin T. cites a recent decision from this district, *Ingandela v. Kijakazi*, No. CV 20-08033 (FLW), 2022 WL 154422, at *13 (D.N.J. Jan. 18, 2022). (Pl. Br. at 22-23) The language quoted in the brief, however, is explicitly marked as dicta for the guidance of the ALJ on remand. The decision does, however, make reference to an earlier decision, *Carratura v. Saul*, No. CV 20-05483 (FLW), 2021 WL 4077565, at *6 (D.N.J. Sept. 8, 2021), that is relevant to claimant's argument. In that case, Judge Wolfson remanded a case to the Administration because "in conducting the subsequent RFC analysis, the ALJ made only a passing reference to the medical evidence regarding the plaintiff's mental health," and nowhere in the RFC assessment did the ALJ "specifically consider or address the impact of Plaintiff's mental limitations on her ability to work as an administrative assistant." (*Id.*) As noted above, the analysis here did not share that defect. ALJ Weathers discussed plaintiff's mental impairments in detail and specifically considered them when constructing an RFC that took

them into account. (AR 17, 21.) I thus find that all aspects of the RFC were supported by substantial evidence and affirm the decision of the Commissioner.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. An appropriate order accompanies this Opinion.


Dated: March 10, 2022


/s/ Kevin McNulty
_____
**Hon. Kevin McNulty
United States District Judge**